POPE MANUFACTURING COMPANY *v.* GORMULLY & JEFFERY MANUFACTURING COMPANY. (No. 2.)

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 206. Argued March 10, 11, 1892. — Decided April 4, 1892.

*Pope Manufacturing Co.* v. *Gormully, ante,* 224. applied to this case so far as the plaintiff claims to recover for a violation of a contract.

Letters patent No. 252,280, Claims 1 and 2, issued January 10, 1882, to Curtis

H. Veeder for "a seat for bicycles," when properly construed is not infringed by the defendant's Champion saddle.

Letters patent No. 197,289, Claim 2, issued November 20, 1877, to A. L., G. M. and O. E. Peters for an anti-friction journal box, are void for want of novelty.

Letters patent No. 245,542, issued August 9, 1881, to Thomas W. Moran for velocipedes, if it involves any invention, is void for want of novelty in the alleged invention protected by them.

Claims 1 and 3 in letters patent No. 310,776, issued January 13, 1885, to William P. Benham for improvements in velocipedes are void for want of novelty in the alleged invention protected by them.

The second and third claims in letters patent No. 323,162, issued July 28, 1885, to Emmit G. Latta for a mode of protecting the pedals of a velocipede with india-rubber are void for want of invention; as it is clear that the coating of pedals to prevent slipping being conceded to be old, the particular shape in which they may be made is a mere matter of taste or mechanical skill.

THE court stated the case as follows:

This was a bill in equity for the infringement of eight patents granted to different parties for devices used in the manufacture of bicycles and velocipedes. Upon a hearing in the court below the bill was dismissed, and the plaintiff appealed to this court. 34 Fed. Rep. 885.

The assignment of errors covers only five patents:

1. Patent No. 252,280, issued January 10, 1882, to Curtis H. Veeder, for "a seat for bicycles," which the court below held to be limited by previous patents to Lamplugh and Brown, to Shire and to Fowler, and as so limited, not to have been infringed by the defendants.

2. Patent No. 197,289, issued November 20, 1877, to A. L., G. M. and O. E. Peters for an anti-friction journal box, which was held to be anticipated, and, if not anticipated, not to have been infringed.

3. Patent No. 245,542, issued August 9, 1881, to Thomas W. Moran for handles for velocipedes, which the court held did not involve invention, and was void.

4. Patent No. 310,776, issued January 13, 1885, to William P. Benham, for improvements in velocipedes, which the court held had not been infringed by the defendants.

5. Patent No. 323,162, issued July 28, 1885, to Emmit G. Latta, for an improvement in velocipedes, which the court, in view of the state of the art, held to be void for want of novelty.

*Mr. Lewis L. Coburn* and *Mr. Edmund Wetmore* for appellant.

*Mr. Charles K. Offield* for appellees. *Mr. W. C. Goudy* was with h m on the brief.

MR. JUSTICE BROWN delivered the opinion of the court.

The bill in this case, in addition to the usual allegations of a bill for the infringement of a patent, sets forth as a distinct ground for recovery the violation of the contract of December 1, 1884, which it was claimed was obligatory upon the defendants. As this claim was, however, disposed of in the cases Nos. 204 and 205, just decided adversely to the plaintiff, upon grounds which are equally available here, we shall take no further notice of it. The case is, therefore, resolved into an ordinary suit for the infringement of a patent.

(1) Patent No. 252,280, to Curtis H. Veeder, is for a "seat for bicycles." In his specification the patentee states that his "improvements relate to the class of seats known as 'saddles,' and especially to devices for suspending the leather or other flexible material of which the seating-surface is composed, and for stretching or taking up the slack in the same, and for connecting the same with the perch or supporting-bar for the seat, and by means of which the seat is made adjustable backward and forward over the perch or bar; and my present invention . . . consists, first, in a divided metallic spring, or supporting-plate for the flexible seat; second, in a modification of that portion of said metallic spring which forms the framework for the rear of the seat; third, in mechanism for elongating or extending said metallic spring so as to take up the slack of the flexible seat; and fourth, in mechanism for completing the support of the seat and connecting the same with the perch or supporting-bar of the vehicle, so as to be adjustable backward and forward thereon."

He further states that he is aware "that a spring has been used to support the seat or saddle of a bicycle," and, therefore does not claim the general application of a spring for this purpose, but does claim:

"1. A suspension-saddle, constructed with a flexib portion C, and having an under spring in two or more parts B D, to which the flexible portion is attached at either end, and which metallic parts are extensible, substantially as and for the purposes set forth.

"2. In a velocipede seat, the combination of plates B and D, clamp F, stop $b^2$, adjusting bolt $F^1$, substantially as shown and described."

Referring to the state of the art, as disclosed by prior patents, there appears in the patent of John C. Miller, of April 10, 1866, a saddle seat suspended at both ends upon springs; the seat, however, has a framework of iron, and consequently is not flexible, and, of course, has no provision for taking up the slack. In the patent to Fowler of 1880, there is a saddle seat, suspended at the front end upon a coil spring, and at the rear end upon a long plate spring; the seat is rigid, however, and lacks the flexibility which characterizes the Veeder patent, and there was apparently no provision for mutual adjustment of the springs. The Shire patent of 1879 has a flexible saddle seat, the front end of which is attached to a strap which passes through a loop, and is susceptible of being shortened or lengthened by means of a buckle. It also has an under spring to which is attached the forward end of the flexible saddle. It differs principally from the Veeder patent in the fact that the slack is taken up by means of a strap and buckle, instead of by an adjustment of the two springs of the Veeder patent. The Bishop patent of 1859 exhibits a flexible seat suspended upon springs at either end, but it also lacks the adjustable feature.

None of these prior patents exhibit a flexible seat supported at either end by two parts of a spring, which are made adjustable relatively to each other, in such manner as to take up the slack; and for the purposes of this case it may be conceded that there was invention in this device, notwithstanding that

other patents showed flexible seats suspended upon springs at either end, and in some cases with the feature of adjustability. The Veeder patent, however, differs no more from the prior patents than do the defendant's saddles from it. In the defendant's Champion saddle a flexible saddle is supported at either end upon springs, the rear one being made adjustable in such a way as to take up the slack. But as Veeder's invention, in view of the state of the art, is a very narrow one, we think it cannot be properly considered as covering the defendant's device. The springs of the defendant's saddle are not only wholly different in form from those of the Veeder patent, but there is no relation between them, the rear one being independently adjustable. The feature of extensibility does not pertain at all to the springs, but to the peculiar manner in which the rear spring is adjusted to the perch. If Veeder had been the first to invent a saddle supported upon springs, or a flexible spring seat capable of adjustment, it might be thought that the defendants could be held to infringe, though they do not employ the double spring of the Veeder patent, but in view of the state of the art, we think the court below was correct in holding that there was no infringement.

(2) Patent No. 197,289 to the Peters is for an "improvement in anti-friction journal boxes" for overcoming the friction of the bearing of all vehicles mounted on wheels, and the journals of all revolving shafts, etc. The invention is "a combination of rollers or cylinders, made of iron, steel or any suitable metal or other material, of sufficient number and suitable in length, size, and form, which revolve around the spindle or bearing of the axle within the hub of the wheel, and around the journal or bearing of the shaft or cylinder, and within the journal box, the rollers being independent of the bearing and the hub or journal box."

The only claim in issue in the case is the second, which is for "the bearings with the shoulder bevelled or notched, combined with the nut, or its equivalent, correspondingly bevelled or notched, as shown in figure 4."

This patent is in substance for a method of overcoming the friction of an ordinary journal by causing the same to revolve

upon elongated rollers, whose action is guided and secured by putting them in a cage, so that their relative relations to each other in their revolution shall be the same. " To support and keep the rollers from running against one another and thereby producing friction, both ends of each are made with a bearing, which goes into rings, or their equivalents, in such a manner as to allow the rollers to turn freely on their bearings as they revolve around the bearing of the axle or shaft. These rings may be flat, or one or both sides rounding or oval, and of one entire piece, or made in sections or parts, and the parts fitted or hinged together in such a manner as to form the required ring." " To retain the wheel on the bearing of the axle, as the wheel of a common road-vehicle, the ordinary nut in use for that purpose, or its equivalent, is made to bevel in conformity with the bevelled ends of the rollers, and the bearing or axle at the inner ends of the rollers is made with a bevelled shoulder to correspond with the ends of rollers."

The patent to Allcott, of March 29, 1870, has also for its " object the diminution of friction in ordinary axle boxes, and consists in constructing the hub box larger than the journal of the axle, and filling the space between the journal and the box with longitudinal metallic rollers, of which two sizes are employed, the larger and smaller alternating, and more completely filling said space." The axle is formed with a grooved flange and the journal with a similarly grooved or bevelled nut. The ends of the rollers are also somewhat bevelled to correspond with the tapering portions of the journal and nut. When the bevelled ends of the rollers become worn down the bevelled sleeve on the nut may be filed down, and the nut screwed up, thus keeping the rollers from any longitudinal motion.

This patent seems to be very nearly, if not quite, a complete anticipation of the Peters patent. Such differences as exist between them are of minor consequence; the bevelled shoulder combined with the bevelled nut or its equivalent being present in, and the essential feature of both patents. In any view of the case it required no invention to make the slight alterations apparent in the Peters patent.

OCTOBER TERM, 1891.

In addition to this, however, the Jewett patent of May, 1868, shows "a journal or axle box, provided with a series of spherical balls, which are placed in a circular recess or chamber, and revolve in contact with the journal or axle, thereby reducing the friction to a great extent, and entirely avoiding the necessity of employing oil or other lubricating material." The grooves of this patent at the opposite ends of the axles are practically the same in their operation as the bevelled shoulder and nut of the Peters patent, the balls giving both vertical and lateral support, and preventing endwise movements. Similar arrangements are shown in the patent to Perley of 1863, and the English patent to Mennons of 1860.

There was also a patent issued to one Smith upon the same day the Peters patent was issued, namely, November 20, 1877, but upon an application filed September 1, 1877, prior to Peters' application, and, therefore, anticipating Peters' patent, in which was represented an axle formed with a spindle, having a collar at its inner end, in which collar was a circumferential half-round groove. The outer end of this spindle is reduced in circumference, and another collar is placed thereon and fastened by a screw, this collar being also provided with a similar groove. In each collar is placed a series of anti-friction balls, which are of such diameter as to be one-half within the groove in the collar. The other half of the ball is within a groove formed one-half in the hub and the other half in the flange upon an annular plate. The operation of this patent is practically the same as that of the device used by the defendant.

This device appears to be, however, a minor variation upon the English provisional specification of 1853 to Chinnock, which also consisted in securing the axle in the box by means of one or more spherical balls running in a circular channel, formed partly in the axle and partly in the box in which it fits. Defendants are the owners of and manufacturing under this patent, and the fact that this and the Peters' applications were pending before the Patent Office at the same time, and that patents were issued upon the same day, is strong evidence that they were not even considered as competitive inventions.

As the defendant's manufacture was not of the elongated rollers of the Peters' patent, but of the spherical balls of the Chinnock, Jewett and other patents, it would seem to follow that, if its device be an infringement of the Peters' patent, the Peters' patent itself must be an infringement of the prior ball-bearing patents.

(3) The Moran patent, No. 245,542, of August 9, 1881, is for a handle for velocipedes, and consists simply in providing rubber handles for counteracting the jar on the hands in travelling, and preventing injury to the machine when falling. The claims are:

" 1. The handle of a velocipede provided with rubber ends, as set forth.

" 2. The handle of a velocipede, in combination with rubber tips sleeved upon its ends as set forth.

" 3. A rubber handle for a velocipede, consisting of a ball and neck combined in one piece as set forth."

Briefly stated, this patent is for nothing more nor less than the application of a rubber ball or cushion upon the extremities of the handle. The patentee states in his specification that he only claims this rubber in its application to velocipedes, it being a not uncommon device as applied to other handles. We have very grave doubt as to whether this involves any invention; but if it does, it is fully anticipated in the English patent to Harrison, of July, 1877, which exhibits a similar method of covering the handles of bicycles with a sheath or glove of india-rubber. There is a slight difference in the form of the sheath in this case, but it is identical in principle, and used for the same purpose. Indeed, the defendant in this connection seems to rely not upon the validity of his patent, but upon the estoppel alleged to have arisen under the contract of 1884, which we have already held not to exist.

(4) Patent No. 310,776, to Benham, is for a method of attaching the horizontal handle bar to the steering head of a bicycle, and consists in making the handle bar, which may be either solid or tubular, continuous, and attaching to the middle of it a lug or detent, which serves not only to locate the handle bar evenly and quickly by an even division of its length on

either side of the middle line of the head, but also to prevent, the handle bar when in position from turning or revolving on its axis. The first and third claims of the patent, which are alleged to be infringed, are as follows:

"1. The combination of an undivided bar and an open-slotted lug, and two sleeve-nuts, or their equivalents, one on either side the lug, surrounding the bar and adapted to lock it rigidly to the lug, essentially as set forth."

"3. In combination with the handle-bar B, the detent D, constructed and adapted to operate substantially as and for the purposes set forth."

The patent is really for making the handle-bar in one piece and so attaching it to the steering head of the bicycle as to prevent any lateral or rotary movement. This is done by the use of sleeve-nuts surrounding the handle-bar and engaging with threaded portions of a lug through which the bar is thrust.

If there be any scope for invention in the attachment of a horizontal bar to a vertical one in such manner that it shall be firm and immovable in any direction, this device appears to have been substantially anticipated by the English patent to Illston, issued in 1879, which shows substantially the same elements operating for the same purpose, and in substantially the same manner. Illston states that he makes "near the top of the head of the bicycle or tricycle a cross-hollow bracket open at its ends and top," corresponding to the open-slotted lug of the Benham patent. "The said bracket has externally a nearly cylindrical figure, and its ends are furnished with convex screws. . . . On each side of the middle flattened part of the handle-bar is a sliding collar milled externally, and screwed internally with a concave screw proper to fit on the convex screw at the end of the hollow or trough bracket on the head." The screw collars of this patent correspond very closely with the sleeve-nuts of the Benham patent.

Upon the whole, it does not seem to us that there was any patentable difference between these two devices, and if there were, we agree with the opinion of the court below, that it is certainly not infringed by the defendants, who, while they use

an undivided handle-bar, have adopted a different method for fastening the same to the steering head, and do not use either the complainant's open-slotted lug and two sleeve-nuts or their detent.

(5) Patent No. 323,162, of July 28, 1885, to Emmit G. Latta, relates to a form of protecting or cushioning the pedals of a velocipede with india-rubber. There are eight claims to this patent, the second and third only of which are alleged to be infringed. They are as follows:

"2. The combination, with the pedal-frame, of a rubber pedal-bar, H, provided with a central longitudinal groove, $h$, and two bearing-surfaces, $h^1$ $h^1$, on opposite sides of the groove, $h$, substantially as set forth.

"3. The combination, with the pedal-frame, of a rubber pedal-bar, H, pivoted to the frame by a rod, $i$, and provided on each of its sides with a longitudinal groove, $h$, and two bearing-faces, $h^1$ $h^1$, on opposite sides of the groove, whereby the bar, H, is adapted to receive the pressure at its sides or edges and be compressed on opposite sides of the rod $i$, substantially as set forth."

The invention in these claims consists in the pedal-bar, combined with the pedal-frame, the pedal-bar being rubber, constructed with grooves and bearing-faces; the second claim providing for the bar being pivoted to the frame, so that it works easily either side up, and will turn on its bearings as the foot presses on the front face or the rear face of the pedal. The pedal is centrally grooved and has two bearing-faces, one on each side of the centre-rod on which it is pivoted.

The application of india-rubber to foot-pedals is shown in the English patent to Harrison of July, 1877, to prevent the slipping of the feet on the pedals. This rubber is made corrugated, and is placed in the same position upon the pedals as the ordinary smooth surface rubber had been placed. The English patent to Jackson of 1876, also shows a treadle cast in one piece, having suitable grooves formed therein to allow of india-rubber being affixed within them by means of cement. It is entirely clear that the coating of pedals to prevent slipping being once conceded to be old, there is no novelty in the

particular shape in which these rubber coverings are made, or the form which the corrugations or groovings shall take; it is a mere matter of taste or mechanical skill.

If there be any novelty at all in the Latta patent it must receive such an exceedingly narrow construction that the defendant cannot be held to have infringed it.

In short, the patents which are made the basis of this bill are, in view of the state of the art, all of them of a trivial character, and, so far as they possess any merit at all, are not infringed by the devices employed by the defendant.

The decree of the court below dismissing the bill, is, therefore,

*Affirmed.*