PETERSON v. MOORE et al.

(Second Division. Skagway. November 23, 1906.)

No. 245S.

1. SPECIFIC PERFORMANCE (§ 93*)—CONTRACTS—TIME AS OF ESSENCE.

Plaintiff and others entered into a contract with Moore, the claimant of the Skagway town site, whereby it was agreed to withdraw all objections to Moore's application for patent, and whereby Moore agreed, in consideration of certain payments, to deed to plaintiff and others certain lots claimed by them after he should receive the patent. Time was of the essence of the contract. Plaintiff purposely avoided his contract as to time and manner of payment for four years, and then offered to comply as of that late date, thus securing a four-year advantage. *Held*, where the obligation of the party seeking relief is not fairly and fully performed, the court will refuse the remedy; that plaintiff's refusal to perform fairly within the time agreed upon barred him from the benefit of the time contracted for; that, while he was still entitled to a conveyance, it must be without benefit

---

·‧*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

of the time agreed upon, but upon cash payment and immediate action, at his costs.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 245–248; Dec. Dig. § 93.*]

2. SPECIFIC PERFORMANCE (§ 8*)—CONTRACTS—DISCRETION OF COURT.
Whether or not specific performance shall be granted rests in the judicial discretion, exercised according to the settled principles of equity, yet always with reference to the facts of a particular case.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 17, 18; Dec. Dig. § 8.*]

3. VENDOR AND PURCHASER (§ 148*)—CONTRACT—PERFORMANCE—TENDER OF CONVEYANCE.
Where plaintiff contracted for the purchase of town lots, the deed to be delivered upon the performance of certain conditions of time and payment by him, and he purposely refrained for four years from complying with his part of the contract, and remains out of the country, and his place of residence was unknown to the defendant, who sought in good faith to comply with his part of the contract, held, on a suit for specific performance, that tender on the part of the defendant was excused.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 290–295; Dec. Dig. § 148.*]

This suit arises over certain lots in the town of Skagway. Application had been made for a patent to the Skagway town site, then known as the "Moore" town site, and prior to September 5, 1901, certain persons, including the plaintiff, had instituted in the General Land Office a contest over certain portions of the land embraced therein. On September 5, 1901, however, all parties to the contest entered into a mutual agreement, in which it was provided that this plaintiff and his associate claimants should withdraw the contest, and that J. Bernard Moore "should proceed at once by all lawful means to secure patent from the United States to him of said tract of land." It was further agreed that:

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

"Within thirty days from the receipt of such patent, conveying to said J. B. Moore said tract of land, the said parties of the first part will make out, execute, and deliver to the respective parties of the second part, or their heirs, executors, administrators, or assigns, full title to the lot, fraction of lot, or parcel hereinafter mentioned and described as claimed by them as now held, * * * upon their payment to him at the time of the delivery of said deed 25 per cent. of the value of said lot."

The price agreed upon was the assessed valuation for the year 1900 as it appeared on the books of the assessor of the town of Skagway. But it was further provided that:

"If any one of the parties of the second part desires an extension of time within which to make said payment, he may elect at the time such deed is tendered, and the parties of the first part agree to grant an extension within which such payment may be made, not exceeding two years from the date of said tender, provided one-half of said 25 per cent. of said valuation shall be paid at the end of the first year from the date of the delivery of said deed."

One of the recitals in the said agreement is as follows:

"It is the essence of the agreement that the parties of the second part will, in good faith, co-operate on the basis of this settlement to end all disputes and litigation, so that the title of all concerned within the limits of said award * * * shall be settled permanently, and to this end the parties of the second part, their agents and attorneys, hereby agree to co-operate to secure such results."

This agreement was duly executed, as well by this plaintiff as by the others. J. Bernard Moore, one of the defendants herein, proceeded with his application for a patent in the General Land Office, without opposition, and on June 20, 1902, a patent from the United States of the Skagway town site was issued. On that day C. E. Wynn-Johnson was detained in quarantine by the health officers of the town, but as soon as he was released, which was within 30 days, these defendants proceeded, through the medium of advertisements inserted in the daily paper published at Skagway, to notify

the parties of their readiness to proceed pursuant to the terms of the agreement. In addition to the notice printed in the newspaper, John G. Heid, an attorney, was retained to prepare the deeds and attend to the legal matters connected with the conveyances. When this plaintiff failed to respond to the notice, Mr. Heid made repeated efforts to see him, and when he ascertained that plaintiff had left the town he endeavored, but without success, to ascertain the whereabouts of plaintiff.

Prior to closing out his business and leaving town, plaintiff inserted in the same paper in which the notice was printed advertisements of his closing-out sale, and that he intended to leave the city. In none of these advertisements was his future destination or place of residence mentioned. The day after he left Skagway, a news item stating that he had started for Whatcom, or as it is now named, Bellingham, Wash., appeared in the Daily Alaskan. Other than this news item, defendants had no notice of the plaintiff's whereabouts until July, 1903, and then the address was obtained through third parties not connected with the plaintiff. When plaintiff left Skagway, he rented his property for $50 per month and placed it in the hands of an agent, who had no authority over it, other than to receive the rents therefor.

On July 28, 1903, defendants by accident learned of plaintiff's whereabouts, and sent him by registered mail a notice, as follows:

"Skagway, Alaska, July 28, 1903.

"To H. O. Peterson, Esq., Whatcom, Wash.:

"On or about July 20, 1902, your deed for town lot in the city of Skagway, Alaska, embraced within the boundaries of the 'Moore Tract,' could have been obtained by you from the undersigned, according to notice given at that time, but so far, you have not made your election with respect to desiring a deed or not.

"This is to notify you that, unless you, within thirty days from date, arrange with the undersigned, C. E. Wynn-Johnson, for such

deed (if you desire one), according to agreement, your right to such deed will be termined and forfeited.

"C. E. Wynn-Johnson,

"Agent for Alaska & N. W. T. T. Co.

"C. H. Wilkinson.

"J. Bernard Moore."

Plaintiff, on August 20, 1903, by letter, replied that he elected to give a mortgage and notes in part payment, and requested that the notes and mortgage be made payable two years from July 28, 1903. The defendants refused to accept them, and prepared notes and mortgage for $675, bearing date September 8, 1903, with interest at 6 per cent. from July 20, 1902; two notes, one for $337.50, dated September 8, 1903, and payable July 20, 1904, on the back of which was indorsed, "Interest paid to July 20/03," and the other for a like amount, the date line not filled out, payable July 20, 1903, on the back of which was indorsed the following, "Interest and principal paid on the within note," and mailed these to Peterson, in care of a Bellingham bank, to be executed by him. Accompanying them was the deed from Alaska & Northwestern Territories Trading Company, by C. E. Wynn-Johnson, its attorney in fact, J. Bernard Moore, Minne Moore, wife of said J. Bernard Moore, and C. H. Wilkinson, to this plaintiff. The deed was signed and sealed, as follows:

"The Alaska & Northwestern Territories Trading Company [Seal],

"By C. E. Wynn-Johnson, Its Attorney in Fact.

"C. H. Wilkinson [Seal],

"By C. E. Wynn-Johnson, His Attorney in Fact.

"J. Bernard Moore [Seal].

her

"Minne  X  Moore [Seal]."

mark

The execution of the deed was duly acknowledged. Plaintiff refused to accept the deed, stating as his reason that it was not properly executed. The mortgage and notes were returned unsigned; the reason being given that they were

not in accordance with plaintiff's letters, that they were dated before the date of the deed, and that no obligation ran before the giving of the deed. The further reason stated was that they should be made and dated from the date of the deed, and should have been made payable in one and two years from and after such date, or "from the date of your notification to me that you had a deed and could deliver the same."

Some further correspondence of a similar tenor passed between the plaintiff and defendants' agent. Nothing further was done until May 12, 1905, when plaintiff executed and tendered to defendants' agent and attorney in fact two mortgages, dated September 22, 1904, payable two years thereafter, and notes with each of the mortgages bearing date the same day, and payable one and two years after date. At the same time plaintiff demanded a deed or deeds for the properties covered by the mortgages. Defendants refused to accept these, or to give the deed as demanded. The plaintiff thereupon commenced this suit for specific performance.

I. N. Wilcoxen, for plaintiff.
Winn & Heard, for defendants.

GUNNISON, District Judge. Plaintiff seems to have failed entirely to live up to the conditions of the agreement into which he entered on September 5, 1901. There is nothing in the whole course of his conduct in this matter to show that he—

"in good faith co-operated on the basis of this settlement to end all disputes and litigation, so that the title of all concerned within the limits of said award * * * should be settled permanently."

On the contrary, every step taken by him seems to have hindered and embarrassed the defendants in carrying out their part of the contract. He relies on newspaper advertisements to advise them that he was about to leave, but refuses

to be bound by the notices of defendants published about the same time in the same newspaper. He leaves his property in Skagway in charge of an agent authorized only to collect rents. His property was rented and he received the income therefrom during most of the time, until defendants, by accident, ascertained his whereabouts. Instead of going to the defendants' office and notifying them that he was about to leave Skagway and what his future address would be, he goes away, entirely ignoring his part of the agreement with defendants; but he still insists upon his "pound of flesh" from them. A news item in a daily paper cannot be relied upon as notice, no matter how reliable a newspaper may be. Nor does he ever demand a deed until after the defendants accidentally discover his whereabouts in July, 1903. On the other hand, the evidence discloses that the defendants have, during the entire transaction, acted in the utmost good faith.

The plaintiff asserts that no tender was made until July or August, 1903, and relies upon that assertion as an excuse for refusing to give the mortgage and notes bearing interest from July 20, 1902. It is true that a technical tender, such as that required in the discharge of debts and contracts, to pay money, was not made by defendants until 1903. But a distinction is made between that character of tender and the tender of performance of a contract other than for the payment of money.

"The word 'tender,' as used in such connection, * * * means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to agreements generally." 1 Beach on the Modern Law of Contracts, § 297.

3 A.R.—11

In every respect the defendants' case meets these essentials. Not only does the evidence show a readiness, but a desire, on defendants' part to comply with the terms of the agreement. Their ability to do so is not controverted, and the notices, Defendants' Exhibits Nos. 1 and 2, printed many times in conspicuous places in the Skagway Daily Alaskan, seem to the court to have been sufficient notice to plaintiff, under the conditions as disclosed by the evidence.

It is a fundamental maxim that "he who comes into equity must come with clean hands." Plaintiff plainly ignored the notices, though he testified:

"No, I had not been advised in such a way that I could take cognizance of it, although there was a rumor that he was going to get a patent. I saw in the paper that he was going to have a patent for it. I never had any direct notice that defendants were ready or prepared to issue deed."

His testimony, taken by commission, indicates plainly that, though he was about to leave Skagway, and though he was generally advised that a patent would soon be or had been received, he took no steps to advise them of his future address or arrange for the transfer of the title. Instead, he rents his property for $50 per month and leaves the city. It was held in Boone v. Missouri Iron Co., 58 U. S. (17 How.) 340, 15 L. Ed. 171, that negligence in the performance of one's part of a contract will extinguish one's equity, so as to bar him from seeking specific performance. The case at bar exhibits, not negligence, but that which is worse, a deliberate disregard of his obligation under the contract. Whether or not specific performance shall be granted rests in the judicial discretion exercised according to the settled principles of equity, yet always with reference to the facts of a particular case. Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 19 L. Ed. 955; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. 109, 32 L. Ed. 500; Pope Mfg. Co. v. Gormully,

144 U. S. 238, 12 Sup. Ct. 637, 36 L. Ed. 419; 1 Beach on Eq. Jurisprudence, § 566. But, where the obligation of the party seeking relief is not fairly and fully performed, the court will refuse the remedy. Marble Co. v. Ripley, supra.. Under the agreement, defendants were—

"within 30 days from the receipt of the patent * * * to make out, execute, and deliver * * * a warranty deed * * * upon their [plaintiffs'] payment to them at the time of delivery 25 per cent. of the value of the lot."

Defendants notified plaintiff generally, as they did every other claimant, of their readiness to proceed. Not alone that, but they sought him when he failed to respond, that they might. proceed with the terms of the agreement. Plaintiff's conduct was such that it was impossible to comply therewith.

There seems to be nothing in the plaintiff's case to appeal to the conscience of the court. Plaintiff is, however, upon payment of the agreed price, entitled to receive a good·and sufficient deed to the premises described in the contract of which he is the claimant. But he can no longer claim the right to elect as to how he shall pay therefor. The time for such election has long passed because of his own acts. De-, fendants should prepare and deposit with the clerk of this court, in the city of Skagway, Alaska, a good and sufficient. deed in fee simple, conveying to plaintiff the premises in question within 30 days from the entry of a decree herein, for delivery to plaintiff, upon his payment of the contract price of said lots, to wit, $575, with interest at the rate of 6 per. cent. from the 20th day of July, 1902, to the date hereof, together with the costs of this suit, said premises to be free and clear from any and all incumbrances, save and except any local taxes or assessments that may have accrued since said July 20, 1902. When the parties shall have complied. with the decree herein, they should execute, each to the other, a full and complete satisfaction of all demands made and

claimed herein. In all other respects, the prayer of the petition should be denied, and the costs hereof should be paid by the plaintiff herein.

Let a decree be entered.