PLATT v. FIRE-EXTINGUISHER MANUF'G CO.[1]

(Circuit Court of Appeals, Third Circuit. January 30, 1894.)

No. 12.

1. PATENTS—LICENSE—FORFEITURE.
  A license which has been declared forfeited by the licensor, according to the terms thereof, for breach of conditions, cannot be restored to validity by the licensee's subsequent tender of money in payment of royalties, which tender is rejected.

2. SAME—CONDITIONAL ASSIGNMENT—ASSIGNEE'S RIGHT TO SUE INFRINGERS.
  An assignment on condition that the assignee shall not make any assignment thereof, or grant any license thereunder, vests in the assignee, until condition broken, a right to sue infringers. Littlefield v. Perry, 21 Wall. 205, followed.

3. SAME—ESTOPPEL.
  The validity of a patent cannot be denied by one who undertakes to justify his use of it under a license.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

In Equity. Suit by the Fire-Extinguisher Manufacturing Company against William K. Platt for infringement of patent. Decree for complainant. Defendant appeals. Affirmed.

R. A. Parker, (Jerome Carty, on the brief,) for appellant.
J. Edward Ackley, for appellee.

Before DALLAS, Circuit Judge, and WALES and GREEN, District Judges.

WALES, District Judge. The Fire-Extinguisher Manufacturing Company, a corporation of the state of New York, brought suit against William K. Platt, to restrain him from the infringement of

[1] Rehearing denied.

letters patent dated July 9, 1878, and numbered 205,942, which had been originally issued to Archibald Graham, administrator of the estate of William A. Graham, for the process of extinguishing fires by means of a stream of mingled water and carbonic acid gas thrown upon the fire by the expansive force of the gas. The defendant, in his answer, set up several defenses, but relied chiefly upon the alleged want of title in the complainant and a license to himself. The complainant's bill was sustained, and a decree was entered ordering an injunction and an accounting, from which the defendant appealed.

The history of the case is this: The inventor of the process described in the letters patent was William A. Graham, who died in the year 1852. During his lifetime he had made several unsuccessful applications for a patent, and just before his death he had assigned a one-quarter interest of his invention to Augustus W. Burton. In the year 1869, letters patent were obtained by Carlier and Vingon for a process similar to that invented by Graham, which were reissued in 1872. In a suit brought for its infringement the patent of Carlier and Vingon was decreed to be invalid, and to have been anticipated by the invention of Graham. Northwestern Fire-Extinguisher Co. v. Philadelphia Fire-Extinguisher Co., 1 Ban. & A. 177. Thereupon Archibald Graham, as administrator of William A. Graham, renewed the application for a patent, which was again refused, on account of the length of time which had elapsed since the last application of his intestate. He then applied to congress for the passage of an act to remove this obstacle, but soon discovered that this measure was opposed by a number of persons, including the defendant, who had been for some time using the Graham invention in making and selling extinguishers; and he was finally compelled to compromise with his opponents by entering into an agreement with them to the effect that, if they would cease their opposition, and he should succeed in getting a patent, he would give to each one of them a license. This agreement was dated January 30, 1878.

The enabling act having been passed by congress, letters patent were issued to Archibald Graham, as administrator, on the 9th of July, 1878, as already stated. On the 18th of the same month he issued a license to the defendant, and at about the same time issued a license to each of the six other persons who were parties to the agreement of January 30, 1878. All of these licenses contained the same covenants and conditions. By section 7 of the defendant's license it was stipulated:

"That the said Graham, or his successor, shall have the right to forfeit and annul this license upon any failure to faithfully comply with the terms or conditions of either of the sections herein contained, and numbered 1st, 3rd, 4th, and 6th, or upon failure to manufacture or sell machines for six consecutive months, or for making any false or fictitious statement or return, upon giving, in any case of forfeiture, thirty days' notice in writing of his election so to do to the said William K. Platt."

By section 9 the defendant agreed not to assign or sell his license to any person not holding a license from the licensor, without the

consent of all the other licensees. Section 10 provides that the sale of the license contrary to the terms of the ninth section shall amount to and be an absolute forfeiture, unless at the same time the entire business of the licensee is also sold; and the licensor agrees not to issue any more licenses, and not to manufacture any of the patented machines; the purpose being to limit the number of licenses to manufacture under the patent to seven. The terms and conditions of the license are extended to and made binding on the heirs, executors, administrators, and successors of all the parties. The first, third, fourth, and sixth sections, referred to, regulate the payment of royalties, the making of quarterly returns of the machines made, and the keeping of books and accounts by the licensee.

On the 15th of March, 1879, the defendant sold his license and all his good will and business to a corporation known as the Consolidated Fire-Extinguisher Company, which soon afterwards became insolvent, and on the 16th of June, 1880, went into the hands of a receiver, who sold its property, patents, and licenses to William N. Frew. The confirmation of the receiver's sale was opposed by the defendant, but was confirmed by the court which had appointed the receiver, on July 18, 1881.

Pending these last-mentioned transactions, Archibald Graham had died, and John A. Graham had been appointed administrator d. b. n. of William A. Graham. On the 5th of February, 1881, John A. Graham, as administrator, caused written notice to be served on the Consolidated Fire-Extinguisher Company of his election to forfeit and annul the Platt license, as provided in section 7 of the license; and on the 17th of February, 1881, a similar notice was served on William N. Frew, the purchaser of the Platt license at the receiver's sale.

On November 25, 1881, William N. Frew, in consideration of the withdrawal of the defendant's objections to the confirmation of the receiver's sale, executed a reassignment to the defendant of the license which the latter had sold to the Consolidated Fire-Extinguisher Company, and in the following month (December) the defendant rendered an account, and offered to pay royalties, to John A. Graham, but the latter returned Platt's check, and refused to recognize the validity of his license.

The complainant having bought up one or more of the seven original licenses, on January 27, 1879, purchased of Julia L. Burton, widow and administratrix of Augustus W. Burton, all of her deceased husband's interest in the one-quarter part of William A. Graham's invention, and by virtue of this ownership of the Burton interest and of the license claimed the right to make and sell the apparatus covered by the Graham patent; whereupon there ensued a protracted litigation between the complainant and John A. Graham. A bill was filed by the complainant and a cross bill was filed by John A. Graham, in the circuit court of the United States for the western district of Virginia, and on May 17, 1883, the court entered a decree declaring the Burton interest to be invalid, and incidentally also that all the licenses granted by Archibald Graham, with the exception of the one issued to Charles T. Holloway, had been for-

feited. Subsequently, a bill of review having been filed by the complainant, this decree was vacated and set aside, and the cause was ordered to be reheard on the original bill and cross bill, and the evidence which had been taken under them. But the parties litigant subsequently compromised their differences by consenting to the entry of a decree by which all the licenses, except the one held by Charles T. Holloway, were adjudged to be null and void, leaving the Burton interest unaffected. At the same time the complainant assigned the Burton interest to John A. Graham, and Charles T. Holloway surrendered his license to him, so that John A. Graham thus became possessed of the whole title and interest in and to the Graham patent. Immediately thereafter John A. Graham granted a new license to Charles T. Holloway, and assigned the Graham patent, subject only to the Holloway license, to the complainant. The license to Holloway and the assignment to the complainant bear date the 1st of April, 1886. In all of these proceedings John A. Graham acted in his representative capacity of administrator.

The facts contained in the foregoing statement are admitted, or abundantly established by the proofs. The court below was not called on to declare a forfeiture of the Platt license. The question was whether the license had already been forfeited by the acts of the parties pursuant to the terms and conditions contained therein. The defendant agreed that if he failed to perform his covenants the license might be forfeited by a written notice served on him, or his successor, and this was done. His subsequent tender of money in payment of royalties, and a promise to perform his covenants, could not avail to remove the forfeiture without the consent of the licensor and the other licensees. Almost identically the same question was presented in Hammacher v. Wilson, 26 Fed. 239, in which the court held that a license which had been forfeited by the agreement of the parties would not protect an infringer, although he might offer to pay whatever was due for royalties. See, also, White v. Lee, 3 Fed. 222. Not only was the Platt license forfeited pursuant to the terms of the seventh section of the license, but the attempted sale and retransfer of the license by Frew to Platt worked an absolute forfeiture, because such sale and transfer were made without consent of the other licensees, and without a sale at the same time of the business of the Consolidated Fire-Extinguisher Company, or of Frew, contrary to the provisions of the tenth section of the license. The reassignment to Platt was made after the notices of forfeiture had been served, of which both Platt and Frew had knowledge. By a written contract of April 7, 1881, Frew had agreed to transfer to Platt the license "in the condition in which it then stood;" and that condition was well understood by Platt, as appears from his letter to Holloway, of September 21, 1880, in which, after giving the history of the Consolidated Fire-Extinguisher Company, he says: "The company has not paid me for my patents and Graham license, and has willfully allowed it [meaning the license] to lapse." This admission by the defendant completes the testimony on this branch of the defense, and leaves no doubt that the license was duly forfeited and annulled.

The complainant's title to this patent, and his right to sue for an infringement, are questioned because the assignment from John A. Graham to the complainant, it is alleged, does not convey the whole monopoly. The deed of assignment stipulates that the complainant shall not during the term of the said patent make any assignment thereof, or grant any license under it, and shall make certain payments as agreed upon between the company and Graham; and the assignment is also made subject to the license granted to Holloway. With these exceptions, the assignor sells, transfers, and assigns all of his right, title, and interest in and to the patent. Of even date with the assignment to the complainant an agreement was made between the latter and Charles T. Holloway, which, after reciting that the complainant is vested with the entire title and interest in the patent, and that Holloway is powerless to prosecute any infringer, provides that he may institute proceedings against such infringer whenever the complainant, upon reasonable notice of infringement, shall neglect or refuse to do so.

The complainant succeeded to the ownership of John A. Graham, administrator, in the patent, and whatever rights the latter had passed to the complainant, except the right to execute an assignment or issue a license. Graham had divested himself of the right to sue for an infringement, and, if the complainant could not sue, no one could. The property would thus become a prey to all who might choose to use it. This would be unreasonable and inequitable. The title was conveyed to the complainant subject only to certain conditions, and the assignor had no more right to it than a stranger, so long as the conditions should remain unbroken. If the complainant should fail to keep his covenants, then the conditions would be broken, and the property would revert to Graham. Until this event happens the complainant has the right to protect his interests by suing infringers of the patent. Littlefield v. Perry, 21 Wall. 205.

The other defenses presented by the defendant's counsel have not been overlooked; but, on a view of the whole case, we are all of the opinion that the bill of the complainant was rightly sustained. Infringement by the defendant was not denied, and the validity of the patent could not be disputed by one who undertook to justify his use of it under a license. Kinsman v. Parkhurst, 18 How. 289; Brown v. Lapham, 27 Fed. 77. Moreover, the validity of the patent had been repeatedly recognized by judicial decisions. The license had been forfeited by the defendant or by his successor, and the title to the patent had passed to the complainant by the assignment from Graham, which also gave it the right to bring this suit.

The decree of the circuit court is affirmed.