## FOSTER HOSE SUPPORTER CO. v. TAYLOR.

(Circuit Court, D. Connecticut. June 29, 1910.)

### No. 1,243.

1. PATENTS (§ 214*)—LICENSE—CANCELLATION—ROYALTY—DELAY IN PAYMENT —WAIVER.

Where complainant licensed defendant to manufacture under a patent, before the patent had been established by adjudication, by a contract authorizing forfeiture in case of nonpayment of royalties when due, and on May 9, 1907, immediately after the validity of the patent had been established, gave a notice of cancellation for the licensee's alleged default in the payment of royalties, but on the 13th following accepted full payment for all royalty accrued on the day following the notice, he waived his right to enforce a forfeiture.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 214.*]

2. PATENTS (§ 214*)—LICENSES—FORFEITURE—NOTICE.

A provision, in a license to manufacture under a patent, that in case of a failure to pay royalties as agreed the licensor by a written notice may terminate the contract, is unavailable in case of default to enable the licensor to declare and enforce a forfeiture without resort to a court of equity.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 322; Dec. Dig. § 214.*]

In Equity. Suit by the Foster Hose Supporter Company against Thomas P. Taylor. Bill dismissed.

J. J. Kennedy, for complainant.

Morris W. Seymour, David S. Day, and Arthur L. Shipman, for defendant.

PLATT, District Judge. There is one definite distinction between this suit and the usual bill in equity, alleging infringement of a patent and asking for an injunction and accounting, which will be noted as briefly as possible:

In paragraph 8 it is alleged in substance that the defendant had prior to May 9, 1907, long been operating under the patent as a licensee, and that on said May 9, 1907, the license was "duly canceled and terminated," and at the same time defendant was warned not to make or sell any more of the patented hose supporters, under penalty of being sued as an infringer.

It will be noticed that there is no direct statement in the bill that complainant had prior thereto terminated the license in accordance with the terms of the license contract. The defendant in his answer

flatly denies the allegations of paragraph 8 and sets forth in extenso a variety of facts which he asserts go to show that the license was not "duly canceled and terminated." The complainant traverses the material allegations of the answer by replication.

The question of where the burden of proof rests seems immaterial, because the important facts are conceded by both parties and may be summarized as follows:

The defendant entered into the license contract before the validity of the patent had been established by adjudication.

In its earlier life the patent had a checkered career. The managing spirit of the present suit was at one time a vigorous and persistent infringer. By using an innocent looking device, viz., the silk loop license, matters were so arranged between complainant and defendant that in fact the defendant's actual outlay for royalties was just one-half what other licensees paid.

On May 7, 1907, the patent in suit was declared valid by court decree, and complainant at once took advantage of the fact that the defendant had delayed his reports on royalties and his payments therefor in the preceding months beyond the dates fixed by the contract. He at once acted under the strict letter of the contract, and, so far as it was in his power to do so, terminated the license contract. The only ground he had to go upon was the delay in reports and payments, and there had been during the prior life of the contract numerous instances of delays of more or less extended duration for which the complainant had never attempted to exercise his claimed right to terminate the contract. The defendant was not in the slightest degree acting in opposition to or derogation of the rights of the owner. He had been careless, as he had been many times before; but on this occasion the complainant pounced upon his negligence as a means to work out a serious injustice to the defendant.

The complainant insists that the motives which influenced him are immaterial, and argues that, no matter how inequitable his action may have been, the license must be treated as having been terminated prior to the filing of the bill, because he was acting strictly within his legal rights and in compliance with the very letter of the contract into which the parties had entered with wide open eyes.

Before looking into the general situation, let me say in passing that, if there were no other way to do equal and exact justice to the parties, it does not seem strained or unreasonable to say to the complainant: You have endeavored to make use of the defendant's failure to pay on time and to exact your pound of flesh, but in view of the fact that after trying to do so, on May 9th, you accepted from him on May 13th full payment for every dollar of royalty due on the preceding 10th, and also that which came due on the day following your notice, you have waived the right to carry your notice into full and final effect, and your relations with the defendant have continued to be those of licensor and licensee.

Having stated this in passing, we will look at the general contention.

The controlling question in the case, which must be answered affirmatively to entitle the complainant to any standing, is whether or not

the written notice above referred to, sent by complainant to defendant, acted as a positive and absolute ending of all contractual relations between complainant and defendant, thereby making it impossible for the court to right the wrong, or to eliminate the wrong attempted.

The complainant insists upon a favorable answer and cites in support of his contention Hammacher v. Wilson (C. C.) 26 Fed. 239, and Platt v. Fire Ex. Co., 59 Fed. 897, 8 C. C. A. 357. The latter decision was founded upon the former, and that in turn harked back to White v. Lee (C. C.) 3 Fed. 222.

It is a positive shock to my judicial sense as a chancellor to be asked to agree that parties by contract can ride over the judicial power by a bargain of their own in regard to so serious a matter as the one here presented. It would seem that as a matter of public policy courts of equity ought, either by positive or negative action, to relieve persons from the consequences of such an improvident bargain. The case before us portrays one of the kinds of forfeiture which equity ought to and does abhor. It should relieve, if asked to do so, and in such a case as this ought not, by its passivity, to lend its aid to enable the unconscionable one to reap the fruits of his bargaining.

So feeling, I am compelled to examine the authorities which are said to support the doctrine with unusual care.

Hammacher v. Wilson was the usual equity suit, based on a patent, and asking for an injunction and accounting. The respondent pleaded a license. Complainant replied that the license had been revoked and canceled in accordance with its terms, before the bill was brought. This raised a distinct issue, which upon facts found the court decided against the respondent; and thereupon, the sea being smooth and the sailing good, found the patent valid and infringed and ordered the injunction and accounting.

If the complainant in the present suit had brought in his bill, saying nothing about the license, and defendant had justified under it, and complainant had replied that it had been terminated by complainant pursuant to its provisions, prior to the suit, for reasons which would commend themselves to a court of equity, we should have substantially the same case. It may have some bearing upon this case, but, in view of the way the matter came up, cannot be called decisive. Further than that, I do not think it can be said to have been warranted by Judge Lowell's decision in White v. Lee (C. C.) 3 Fed. 222.

It is clear that the case before Judge Lowell was not in the least like the case before Judges Carpenter and Colt, and it strikes me that the latter judges, in order that White v. Lee might be used to unlock their problem, were forced to stretch almost to the breaking point some thoughts which, perhaps accidentally and certainly incidentally, slipped from Judge Lowell's pen as he wrote on a totally different set of facts.

In Platt v. Fire Ex. Co., the big and only problem here was purely an incident.

Both cases were justly decided, and the equities sustaining them are apparent.

There are numerous decisions which hold that when a license contract contains provisions for reports and payments of royalties at speci-

fied times, and that failure to so report and pay shall work a forfeiture of the license and render the contract null and void, the licensor must seek the aid of the court before he can consider his contract relations with the licensee at an end. I cannot understand how the parties by stating specifically that, in the event of failure to pay, the licensor by written notice may terminate the contract, can take their case out of the hands of a court of equity. If they intended to do so, they were trying to usurp the functions of the court, and, if they did not intend to do so, they have left their contract right in line with the mass of decisions referred to.

If affirmative relief against the forfeiture were asked on the facts presented, it would be granted without question. With the same facts staring the court in the face upon the pleadings, it is my positive duty to find that the bill is without equity and should therefore be dismissed.

It is so ordered.