FOSTER HOSE SUPPORTER CO. v. TAYLOR.

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

No. 115.

PATENTS (§ 214*)—LICENSES—FORFEITURE—RELIEF AGAINST IN EQUITY.

A provision in a license to manufacture under a patent that, in case of default in the payment of royalties, the contract may be terminated by a notice, is valid and effective in so far that the licensor may forfeit the license without resort to a court of equity, but does not preclude a court of equity from relieving against a forfeiture at the instance of the licensee, and, under general equitable principles, it should do so where the default is merely in delay in payment of royalties, and their payment with interest will fully compensate the licensor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 321–327; Dec. Dig. § 214.*

Requisites and validity of patent licenses, see note to St. Louis S. F. M. Co. v. Sanitary S. F. M. Co., 103 C. C. A. 569.]

Appeal from the Circuit Court of the United States for the District of Connecticut.

Suit in equity by the Foster Hose Supporter Company against Thomas P. Taylor. Decree for defendant (180 Fed. 994), and complainant appeals. Affirmed.

J. J. Kennedy and M. B. Phillipp, for appellant.

D. S. Day, M. W. Seymour, and A. L. Shipman, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a bill in equity asking for an injunction, accounting, and damages for infringement of letters patent No. 638,540, for improvements in hose supporters. The bill by way of anticipation alleged that the defendant had operated under the patent by virtue of a license which was duly terminated May 9, 1907. The answer admitted the validity of the patent, and the use of it by the defendant, but denied that the license had been duly terminated.

The defendant also filed a cross-bill, asking for affirmative relief in the form of an injunction preventing the complainant from declaring the license to be terminated, and a decree that it should stand with full force and effect. This cross-bill was on complainant's motion stricken from the files; the court being of opinion that the whole dispute could be settled upon the issues in the original cause. We shall so dispose of it, although we think that the defendant asking affirmative relief followed the better practice in filing the cross-bill.

The thirteenth article of the license agreement was as follows:

"It is agreed that if the party of the second part shall fail to keep accounts, or shall fail to make reports or pay royalties promptly as herein provided, or if during any year the royalties so paid by said party of the second part to said party of the first part shall not amount to at least $5,000, then the party of the first part may within thirty days of any such default or within a like period after the end of any such year in which the royalties shall not amount to at least $5,000, terminate this license by giving notice to the party of the

second part of her election so to do, but such termination shall not release the party of the second part from the payment of any royalties then due under this license."

The defendant not having made reports in or paid royalties for February, March, and April, 1907, complainant notified him in writing May 9, 1907, "of our election to terminate the license granted in and by said agreements, and do hereby terminate said license forthwith, on account of your failure to make the reports in writing, and to pay the royalties, as provided for in and by said license agreements." May 13th the defendant paid up all the royalties due, which were received by the complainant without prejudice to its notice of termination as aforesaid.

Great importance is attached by the defendant to two decisions of the Supreme Court which we think have little application to the question whether the court below could grant the defendant relief against the cancellation of the license, viz.: Wilson v. Sandford, 10 How. 99, 13 L. Ed. 344, and Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357. Both cases went off on the ground of lack of jurisdiction in the Circuit Court. In the Wilson Case the bill asked that the license to the defendant be set aside and an injunction and accounting awarded. The validity of the patent and the use of it by the defendant were admitted. The court held that the bill was primarily for equitable relief by way of setting aside the license and secondarily for infringement. The amount involved being less than $2,000, the Circuit Court was held to be without jurisdiction of the primary cause of action.

In the Hartell Case the bill alleged that the complainant and defendant had entered into a contract of license orally which the defendant refused to execute in writing, and prayed for an injunction and accounting. The defendant admitted the validity of the patent and the use of it, but denied the terms of the agreement as stated in the bill. The right to an injunction depending on the terms of the license, and they being in dispute and admittedly containing no provision for cancellation, the bill was primarily for the equitable relief, and not for infringement. Both parties being citizens of Pennsylvania, the Circuit Court was therefore without jurisdiction. It was indeed stated in the opinion of the court that the complainant had not the right to determine the contract of his own accord, and this was evidently true because there was no pretense that it contained any provision as to cancellation.

We think the rights of the parties as to the license in this case depend upon general equitable principles. From very early times equity relieved against the strict enforcement of the terms of mortgages by creating the doctrine of equity of redemption. This prevented the actual forfeiture of the borrower's title to land which had been conveyed to the lender as security only. Thus the subject of mortgages became a distinct head of equitable jurisprudence. Then relief was given against the landlord's right under a covenant in the lease to re-enter upon the tenant's failure to pay rent when due. The right of re-entry was treated as a security for the rent, and, if the payment of rent with interest would fully compensate the landlord, equity would enjoin him from forfeiting the lease. Giles v. Austin, 62 N. Y. 486; Horton v. N. Y. C. R. R. Co., 12 Abb. N. C. (N. Y.) 30; Atkins v. Chilson, 11 Metc. (Mass.) 112. On the other hand, insurers in policies on

lives will not be enjoined from forfeiting policies when premiums have not been paid when they become due. This is on the ground that the nature of their business makes the time of payment of the essence of the contract. Klein v. Ins. Co., 104 U. S. 88, 26 L. Ed. 662. Mr. Justice Woods quoted with approval from New York Life Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789:

"If the assured can neglect payment at maturity and yet suffer no loss or forfeiture, premiums will not be punctually paid. The companies must have some efficient means of enforcing punctuality. Hence their contracts usually provide for the forfeiture of the policy upon default of prompt payment of the premiums. If they are not allowed to enforce this forfeiture, they are deprived of the means which they have reserved by their contract of compelling the parties insured to meet their engagements. The provision, therefore, for the release of the company from liability on a failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the assured in making punctual payment of the premiums, is to destroy the very substance of the contract. This a court of equity cannot do. Wheeler v. Connecticut Mutual Life Insurance Co., 82 N. Y. 543 [37 Am. Rep. 594]. See, also, the opinion of Judge Gholson in Robert v. New England Life Insurance Co., 1 Disn. (Ohio) 355."

It seems to us that payment of the royalty in licenses is, so far as the licensor is concerned, the main object of the contract, and that a court of equity ought to relieve against the forfeiture if payment with interest will fully compensate him, and this whether the provision as to forfeiture is self-executing or at the option of the licensor or in a mode prescribed, as in this case, by giving notice in writing. Mr. Bispham in his work on Equity says at section 181:

"The relief afforded in case of penalties is only an instance of a general rule: for the same species of redress will be afforded in all cases of forfeiture resulting from nonpayment of money, and in all cases where the damage incurred by nonperformance is susceptible of pecuniary measurement, and therefore of compensation. But equity will not in general, and in the absence of special circumstances calling for interference, give relief in cases of forfeiture growing out of breach of covenant for repairing, insuring, or doing any specific act. The ground of this difference is that in such cases it is unknown 'what the measure of damages shall be.' Therefore it cannot be argued that there is any right in a court of equity, or any practice of such a court, to give relief in cases of this kind by way of mercy, or by way merely of saving property from forfeiture."

The complainant contends that, the parties having agreed upon their respective rights in a precise manner, the court would be making a new contract for them if it relieved against the cancellation of the license. Reliance is placed upon authorities of which the following are the most important. Judge John Lowell in the Circuit Court for the District of Massachusetts held in the case of White v. Lee, 3 Fed. 222, that, when the agreement requires a written notice to be given, the license cannot be terminated without giving such notice. This was all that was necessary to be said in the case, but he added:

"In some few patent cases, beginning with Brooks v. Stolley, 3 McLean, 523 [Fed. Cas. No. 1,962], it has been held that a patentee enjoyed the unusual privilege of treating a breach of covenant as if it of itself worked a forfeiture. No doubt the parties may agree that such an effect shall follow; and this will account for some of the decisions. The others of this sort are overruled by Hartell v. Tilghman, 99 U. S. 547 [25 L. Ed. 357]."

This dictum was followed by the Circuit Court of the same district in Hammacher v. Wilson, 26 Fed. 239, where the court said:

"We think the evidence shows that for reasons which seemed sufficient to him at the time he deliberately determined not to make the payments required by the license. It is true that he has since offered to pay the sums due, and he strenuously contends that his license ought not to be forfeited for mere neglect to pay money, since he now offers to pay whatever may be due. Undoubtedly his argument would be very strong if this were an action to ascertain and declare a forfeiture. The question, however, which we have to decide, is not whether we shall now declare the license forfeited, but whether it has already been forfeited by the acts of the parties, pursuant to the provisions contained therein. The respondent agreed that, if he failed to perform his engagements, the license might be forfeited by a written notice served on him. We see no reason why such an agreement may not be made and enforced. White v. Lee, supra. He has failed to perform his engagements, the notice has been served on him, and we think, on the service of that notice, the license ceased to protect the respondent."

. The Circuit Court of Appeals for the Third Circuit in Platt v. Fire Extinguisher Co., 59 Fed. 897, 8 C. C. A. 357, spoke of it with approval:

"The facts contained in the foregoing statement are admitted or abundantly established by the proofs. The court below was not called on to declare a forfeiture of the Platt license. The question was whether the license had already been forfeited by the acts of the parties pursuant to the terms and conditions contained therein. The defendant agreed that, if he failed to perform his covenants, the license might be forfeited by a written notice served on him, or his successor, and this was done. His subsequent tender of money in payment of royalties, and a promise to perform his covenants, could not avail to remove the forfeiture without the consent of the licensor and the other licensees. Almost identically the same question was presented in Hammacher v. Wilson [C. C.] 26 Fed. 239, in which the court held that a license which had been forfeited by the agreement of the parties would not protect an infringer, although he might offer to pay whatever was due for royalties."

. We can go with these authorities so far as to hold that, when the contract provides the manner in which the licensor may forfeit the license, he need not apply for assistance to any court, but not to say that in such a case a court of equity is without power to relieve against the forfeiture at the instance of the licensee.

The action under consideration is one for infringement, pure and simple. There is no dispute about the terms of the license. The Circuit Court had jurisdiction, not only by virtue of the subject-matter, but by virtue of the citizenship of the parties. It was therefore in a position to dispose of the whole matter before it, and it was its duty to do so. Royalties having been paid in full at the time the bill was filed, though with a little delay, and the licensee being ready, willing, and able to pay punctually thereafter, the licensor was not injured, and we think the court properly dismissed the bill.

. Decree affirmed, with costs.