### RUSSELL et al. v. BOSTON CARD INDEX CO.

(Circuit Court of Appeals, Third Circuit. September 10, 1921.)

No. 2697.

1. Patents ⬅206—Contract held a license, and not an assignment.

In a contract by which defendants, owners of a patent for an index system, granted to complainant "the sole right to use their said patent rights" in certain states and territories "on the conditions hereinafter named so far as the same may be necessary for the successful making and marketing of said index system," the phrase "so far as may be necessary for the successful making and marketing of said index system" *held* not to qualify the "conditions" named, but to qualify and limit the grant, and the contract *held* to constitute a license, and not an assignment.

**2. Patents ⊕►206—Grant of anything short of the entire monopoly is a license.**

The grant of anything short of the entire unqualified monopoly given by a patent, in the territory specified, is a mere license.

**3. Patents ⊕►214—Contract for license may be forfeitable.**

A provision of a contract, granting rights under a patent that in case of assignment of such rights without consent of the licensors the contract should be terminable at their election, *held* valid and enforceable.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the Boston Card Index Company against Robert C. Russell and others. Decree for complainant, and defendants appeal. Reversed.

Beatty, Magee & Martin and John H. Roney, all of Pittsburgh, Pa., and Joseph C. Fraley, of Philadelphia, Pa., for appellant.

John G. Frazer and Reed, Smith, Shaw & Beal, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. On March 17, 1916, Andrew Siegel and Robert C. Russell, doing business under the firm name of Siegel-Russell Index Company, granted by a written instrument, to the Boston Card Index Company, hereafter called the plaintiff, a corporation of Massachusetts, certain sole rights under letters patent No. 869,521 and other pending patents upon specified conditions in all the states and territories of the United States except Pennsylvania, New Jersey, Maryland, Ohio, and West Virginia. Robert C. Russell, J. Parker Russell, and J. Clifford Russell formed a partnership on February 1, 1919, and took over the business of the Siegel-Russell Index Company, which they are conducting under the name of the Russell Index Company. One of the conditions of the grant was that—

"The said party of the first part [Boston Card Index Company] further agrees not to assign its interest in this agreement to any person, firm or corporation without the written consent of the second party so to do."

The agreement further provided that—

"If said first party shall become insolvent, bankrupt, or commit a breach of any of the agreements on its part to be done, kept, or performed, then upon such default or breach of covenant, and upon written notice being given by second parties to first party of intention of second parties to nullify this contract, all of the rights, agreements, and privileges granted to first party under this agreement shall cease and determine, and revert to and become reinvested in the said parties of second part as fully and completely as if this agreement had not been made."

On June 19, 1919, the Boston Card Index Company made an agreement with William N. Howard and Hiram H. Howard, of Pittsburgh, Pa., wherein, inter alia, the following is recited:

"Whereas, the Boston Card Index Company has exclusive sales rights under the United States letters patents granted and to be granted to R. C. Russell, of Pittsburgh, Pennsylvania, and to the Siegel-Russell Index Company,

⊕►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of said Pittsburgh, for an index known as the 'Russell Index,' 'Russell Definite Index,' or any other trade-name that may be used; and

"Whereas, the Boston Card Index Company desires to sublease to said William N. Howard and Hiram H. Howard the exclusive rights in the states of California, Oregon, Washington, Arizona, Nevada, Utah, New Mexico, and Idaho; and

"Whereas, said William N. Howard and Hiram H. Howard desire to obtain said rights and to conduct business herewith:

"Now, therefore, for and in consideration of the mutual covenants and agreements herein contained and of one dollar by each party to the other party in hand paid and the receipt of which is hereby acknowledged, the parties hereto agree as follows:

"First. The said Boston Card Index Company agrees to grant to said William N. Howard and Hiram H. Howard, exclusive rights in and to the use of the United States letters patents, granted and to be granted, etc.

"All contracts, however, for the installation of said system, shall be made in the name of the said William N. Howard and Hiram H. Howard, or their heirs, and in no way involve the said Boston Index Card Company, except that full credit shall be given said Boston Card Index Company as lessee under the United States letters patents aforesaid in all correspondence and contracts."

After the Howards had operated some time under the sublease, the defendants learned of its real character, and thereupon, on September 7, 1920, notified the plaintiff in writing that they elected to determine, cancel, and declare at an end the agreement of March 17, 1916, on the ground that the contract between it and the Howards was a breach of the agreement. Whereupon plaintiff filed a bill in the District Court, praying that the agreement be adjudged to be in full force and effect, and that the defendants be enjoined from granting licenses to others in the territory given to plaintiff, or from persuading others from entering into contracts with it in that territory. Upon final hearing the court decreed that the agreement of March 17, 1916, and the supplemental agreement constitute a valid and subsisting contract between the plaintiff and defendants, that they were in full force and effect and binding upon defendants, and that defendants were perpetually enjoined as prayed.

The defendants appealed to this court, and the real question is whether or not the agreement of June 19, 1919, between the plaintiff and the Howards, entered into without the written consent of the defendants, constitutes a breach of the agreement of March 17, 1916. The determination of the question depends upon what is meant by the covenant, "The said party of the first part further agrees not to assign its interest in this agreement without the written consent of the second parties," and upon whether or not the agreement of June 19, 1919, between the plaintiff and the Howards comes within the prohibited assignment.

[1] The plaintiff contends that the contract of March 17, 1916, is an assignment of an interest in a patent, and the defendants contend that it is a mere license. The learned trial judge held that it was an assignment. The language of the grant is as follows:

"The said second parties [defendants] further agree to give said first party [plaintiff] the sole right to use their said patent rights and improvements in all the states and territories of the United States, excepting the states hereinafter expressed and upon the conditions hereinafter named, so far as the same

may be necessary for the successful making and marketing of said index system."

The court held that the words, "so far as the same may be necessary for the successful making and marketing of said index system," qualify "the conditions hereinafter named," and not the "sole right to use their said patent rights and improvements," and so the qualifying words do not limit the quantum of the grant as defendants contend. The plaintiff, however, before this controversy arose, construed the quantum of the grant contained in the contract of March 17, 1916, in the agreement of June 19, 1919, between itself and the Howards. That agreement states that:

"Whereas, the Boston Index Company has exclusive sales rights under United States letters patent granted and to be granted to R. C. Russell," etc.

The plaintiff's conception of what it had under the agreement of March 17, 1916, seemed to be "exclusive sales rights." The language of the grant was further construed by plaintiff's counsel in the "first" paragraph of the bill of complaint. It states:

"Siegel-Russell Index Company agreed to give the plaintiff the sole right to use said patent rights and improvements in all the states and territories of the United States, with the exception of Pennsylvania, New Jersey, Maryland, Ohio, and West Virginia, upon the conditions named in said contract, so far as said rights should be necessary for the successful making and marketing of said index system."

[2] We are of opinion that the words, "so far as the same may be necessary for the successful making," etc., were correctly construed by the plaintiff and its counsel. They qualify "the sole right to use the said patent rights" and limit the quantum of the grant, thus giving the plaintiff "sales rights," a license under the patents. The grant of anything short of an entire, unqualified monopoly in the territory specified is a mere license. Gayler & Brown v. Wilder (10 How.) 51 U. S. 477, 494, 13 L. Ed. 504. Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923; Pope Manufacturing Co. v. Gormully & Jeffery Manufacturing Co., 144 U. S. 248, 250, 12 Sup. Ct. 637, 36 L. Ed. 419.

[3] Whatever the grant was, an assignment of an interest in the patent or a mere license under it, the grantors had the unqualified right to impose any conditions upon the grant they chose. One of the conditions it contained was that the plaintiff was not to assign its interest in the agreement without the written consent of the defendants. The plaintiff did convey its interest in the agreement in eight states to the Howards without their written consent. This seems to us a clear breach of the covenant. After the defendants had served notice on plaintiff that they had elected to forfeit its rights in that agreement, an instrument was executed by the plaintiff and the Howards on October 25, 1920, in which they sought to construe the agreement between them of June 19, 1919, as one of agency only. That agreement, however, must stand upon its own terms as interpreted by the court under the ordinary rules and canons of construction, and cannot be changed by their own interpretation to suit the situation after trouble began.

Yet it is interesting to note that W. N. Howard interpreted the contract of June 19, 1919, in a telegram to the defendants on July 31, 1920, before the defendants forfeited the rights of the plaintiff in the contract of March 17, 1916. He then, in response to questions, said that the contractual rights of himself and brother with the plaintiff under the agreement of June 19, 1919, were perpetual and exclusive, and empowered them to license users of the system for continued use in a given index, and that they were not in business for the plaintiff, but for themselves.

Whatever the interest conveyed to the plaintiff by the instrument of March 17, 1916, was, that entire interest was substantially conveyed to the Howards by the agreement of June 19, 1919, so far as it related to the states of California, Oregon, Washington, Arizona, Nevada, Utah, New Mexico, and Idaho. The plaintiff, in the agreement of June 19, 1919, practically copied the terms of the agreement of March 17, 1916. The defendants have not waived the breach or acquiesced in it. On the contrary, within a month and seven days after they definitely knew the plaintiff had conveyed its interest in certain specified territory in the agreement of March 17, 1916, and the supplemental agreement of June 5, 1917, to the Howards, they forfeited its rights thereunder in accordance with the provision relating thereto in the contract. In so doing they were exercising their contractual authority, and with that exercise the rights conveyed to the plaintiff in the agreement of March 17, 1916, came to an end. Platt v. Fire Extinguisher Manufacturing Co., 59 Fed. 897, 8 C. C. A. 357; Foster Hose Supporter Co. v. Taylor, 184 Fed. 71, 106 C. C. A. 467.

It follows that the decree of the District Court must be reversed, with instructions to dismiss the bill of complaint.