[Civ. No. 6074. First Appellate District, Division Two.—March 8, 1928.]

AMERICAN WOODLITE CORPORATION (a Corporation), Respondent, v. WOODLITE CORPORATION (a Corporation) et al., Appellants.

Byrne & Lamson for Appellants.

Brownstone & Goodman for Respondent.

MURPHEY, J., *pro tem.*—This action was begun by the plaintiff to declare that a contract made between the Berkeley Light Corporation, plaintiff's assignor, and the defend-

ants Duryea and Atwood be canceled and terminated and for an injunction preventing the defendants from asserting any claim thereunder. The judgment of the superior court was for the plaintiff and the defendants appeal.

The plaintiff was the owner of a number of patents covering improvements in light projections, particularly as applied to automobile headlights. In March, 1923, plaintiff's assignor made a contract with the defendants Atwood and Duryea herein whereby the latter secured an exclusive license to sell lenses and commodities covered and protected by said patents throughout the United States and Canada.

The essential provisions of the contract about which the controversy of the parties to this litigation centered are as follows (the numbers are as they appear upon the original contract):

"III. Licensor will at its own cost and expense manufacture and deliver to Licensees at the earliest practicable time one complete pair of headlights for use on automobiles, which lights shall be approved as a marketable commercial model by said William G. Wood. Licensor shall also furnish and deliver to Licensees free of charge a complete set of blue prints of working drawings and specifications covering the above headlights.

"IV. Within thirty days after Licensor shall have furnished Licensees with said headlights, Licensees shall take the initial steps and proceed with reasonable diligence with the manufacture of one hundred (100) pairs of automobile headlights modeled after the pair so received from Licensor, and Licensees shall furnish and deliver to Licensor free of charge seven (7) pairs of such headlights for its own use as soon as the same are completed."

Paragraph VI tabulates a graduated scale of royalties to be paid by the licensees to the licensor, running from $7,500 for the first year to $100,000 for the fifth year.

"XIII. This license agreement shall not be assigned by Licensees without the written consent of Licensor except that Licensees shall have the right without the consent of Licensor to assign this agreement to a corporation which shall be sufficiently financed to carry out the terms of this agreement, in which event such corporation shall succeed to all the rights and privileges of Licensees hereunder and be

bound by all the terms and conditions hereof to be performed and observed by Licensees. . . . ''

After the contract of March 10, 1923, was entered into and on the thirty-first day of July, 1923, the licensees, Duryea and Atwood, formed a Delaware corporation with a capital of $500,000 to carry out the terms of the contract entered into in March of that year. On July 16, 1923, the plaintiff's predecessors delivered to Atwood and Duryea one complete set of headlights, approved as a marketable commercial model by Wood, and at the same time furnished to the licensees a complete set of blue-prints, etc.

It is the contention of the plaintiff that the defendants failed utterly to comply with the agreements set forth in paragraphs IV and XIII and that by reason thereof the contract was canceled and any and all rights of the licensees thereof have been terminated.

 There is some contention as to the time when the corporation to be formed under paragraph XIII was required by the contract to be sufficiently financed to carry out its terms. Judged by the amounts stipulated to be paid as royalties, it is evident that the parties considered these patent rights of great value and the transaction one of considerable magnitude and by its express terms it is apparent that the parties contemplated diligent activity to put the undertaking on a paying basis. Bearing this in mind, let us read the provisions in regard to financing. According to those provisions the licensees may assign ''to a corporation which shall be sufficiently financed to carry out the terms of the agreement, *in which event* such corporation shall succeed to all the rights and privileges of licensees.'' Appellant contends throughout the discussion that this language means that the financing is something to occur in the future or as circumstances require. We are unable to agree with this contention or that this language may fairly be said to bear such construction. Restating the matter, the parties said in the event that the corporation formed by the licensees shall be sufficiently financed to carry out the terms of the agreement it shall succeed to the rights and privileges, etc. It seems to us that the meaning is perfectly clear that the financial status must precede the passing of the licensees' title to the corporation and any attempt at further discussion would simply result

in encumbering the record. There is no contention that at the time the corporation took over the contract it was financed in any substantial sum whatever.

With respect to the real issues in controversy the trial court, after finding that the plaintiff and its predecessors in interest had in all respects performed all the terms, conditions, and obligations required by the contract to be performed by them, proceeds and specifically finds as follows:

"Defendants, R. F. Duryea and C. G. Atwood did on or about the 15th day of October, 1923, assign the said contract to the defendant Woodlite Corporation, contrary to the provisions of paragraph 13 of said contract set forth in paragraph 3 of the complaint; that at the time such assignment was made and thereafter and up to the time of the commencement of this action the defendant, Woodlite Corporation was not sufficiently financed or reasonably financed to carry out the terms of said contract, or possessed of sufficient or reasonable financial resources to carry on the operations or projects or any material or substantial part of the obligations or projects, to which said corporation or its assigns, were committed under said contract; that the finances of said corporation were during all of said period inadequate and insufficient for the performance of the obligations on its part as the assignee of the said Duryea and the said Atwood, under said contracts."

The court further found that prior to the assignment to the Woodlite Corporation the plaintiff or its predecessors had delivered to said defendants Duryea and Atwood one complete pair of headlights approved as a marketable commercial model by William G. Wood and also that the plaintiff had supplied the said licensee with a complete set of blue-prints and working drawings.

The court further found "That neither the said Atwood and Duryea, or the said defendant Woodlite Corporation, within thirty days after said 16th day of July, 1923, in conformity with said contract, and particularly with paragraph 4 thereof, or otherwise, took the initial steps for the manufacture, nor did they thereafter proceed with the manufacture of one hundred or any other number of pairs of headlights, with the exception of two pairs of headlights modeled after the pair so received from said licensor, and the

said defendants and each of them have done nothing whatever toward the manufacture of said one hundred pairs of automobile headlights, except to manufacture the two pairs thereof before referred to, and the said two pairs were so manufactured and completed long prior to December 5, 1923. That said defendants have done nothing whatever toward the performance of any term or condition of the said contract, except to manufacture two pairs of headlights, and conduct certain fruitless negotiations with automobile headlight manufacturers with reference to the use or manufacture of said patented articles, nor have they or any of them furnished or delivered to plaintiff any headlights.''

At the time the corporation took over the contract, its finances were speculative and prospective and there is, in our judgment, ample evidence in the record to sustain the findings of the trial court as above set out and in holding thus we are not unmindful of the fact that in cases of this character the burden is upon the plaintiff to establish his case by clear and convincing evidence. It may be said with reference to the sufficiency of the evidence to support the finding as to the financial status of the corporation that it shows that the least estimate of the defendants' representations with regard to the amount required to satisfactorily finance the deal is $50,000; that the estimates ran from that amount to $150,000 or $200,000; that at no time prior to the final notice of cancellation hereinafter mentioned was there a net balance of more than one-third of the smallest amount above mentioned. It may be further said, as disclosed by the record, that on two occasions between the date of the assignment to the corporation and the final cancellation by the plaintiff and while negotiations for the manufacture of the 100 pairs of headlights named in the contract were in progress, calls for cash were made upon the corporation and the negotiations pending thereon were immediately discontinued. In the first instance when the licensees were negotiating with an Indiana corporation and they were considering tentative plans for the manufacture of the said headlights, the manufacturer suggested to the licensees the necessity of an advance of $10,000. After this suggestion the negotiations were promptly terminated. After the preliminary notice of intended cancellation was served

in December, 1923, the defendants entered into a contract with a California firm to manufacture these headlights Immediately a demand was made to advance $20,000 before work was undertaken as in the former case. Nothing further was done in the furtherance of this activity. From all of which the conclusion seems inevitable that the determination of the trial court that the corporation was not sufficiently or at all financed to carry out the requirements of the contract is correct.

It may be further stated as a fact not challenged or questioned that at no time either before or after the notice of cancellation did the defendants ever manufacture the 100 pairs of headlights specifically required by the terms of the contract. The defendants make the contention that their inability to make a more satisfactory financial showing and their failure to manufacture the required number of headlights was attributable to the acts and conduct of the plaintiff. One such contention is that Wood, the vice-president of the plaintiff corporation, told Duryea, one of the licensees, that because of his high regard for him he would give him further time to raise the money. Aside from the fact that the record fails to disclose any authority vested in Wood to vary the terms of the written contract made by the corporation, without which authority his promise would have no binding effect upon the corporation, the promise itself was too vague and uncertain to serve as the basis for any claim of estoppel. Other contentions are that the representatives of the plaintiff interfered with and blocked the financial plans of the defendants. In response to this contention the court specifically found that no unlawful or unwarranted act of the plaintiff interfered with any activities of the defendants in operating under the license and there is no evidence to disturb the finding. It may be further stated that the record discloses that the plaintiff was persistently and continually urging the licensees to fulfill their obligations under the contract. The preliminary notice of default was given on the fifth day of December, 1923, after which time, and until the fourth day of February, 1924, defendants did nothing to effectuate their agreements under the contract, contending, as we understand their position, that their rights were to be determined as of the date of the

preliminary notice of intention to terminate the contract. This position is not sound. By the terms of the contract the licensees must, within 30 days after the notice, keep or perform the terms and the conditions of the agreement wherein they are in default, or the licensor shall thereupon have the right, by serving the licensees with notice in writing, forthwith to vacate the license. This final notice of revocation was not actually served for 60 days after the preliminary notice. It would seem to us that during this period of time the licensee should have made a supreme effort to wipe out the alleged default, and if during that period he had acquired the financial ability to carry out the contract program and entered into a contract financed to assure its completion for the manufacture of the headlights provided for in the contract and conveyed this information to the plaintiff before the final notice of default was given, his standing in a court of equity on an application to declare a forfeiture of his rights would then have had appealing force, if it would not have been unanswerable. On the other hand, if they were unable to and did not make this showing prior to the date of the final notice of cancellation, they would have had no standing in such a court, even though they subsequently were able to demonstrate their ability to fully carry out the terms and provisions of the contract. In this respect we call attention to the language in *Hammacher* v. *Wilson,* 26 Fed. 239, a case similar in many respects to the case at bar, in which the court says:

"We think the evidence shows that for reasons which seemed sufficient to him at the time, he deliberately determined not to make the payments required by the license. It is true that he has since offered to pay the sums due, and he strenuously contends that his license ought not to be forfeited for mere neglect to pay money, since he now offers to pay whatever may be due. Undoubtedly his argument would be very strong if this were an action to ascertain and declare a forfeiture. The question, however, which we have to decide, is not whether we shall now declare the license forfeited, but whether it has already been forfeited by the acts of the parties, pursuant to the provisions contained therein. The respondent agreed that, if he failed to perform his engagements, the license might be forfeited by a

written notice served on him. We see no reason why such an agreement may not be made and enforced. (*White* v. *Lee* [(C. C.) 3 Fed. 222; 4 Fed. 916; 14 Fed. 789] *supra*.) He has failed to perform his engagements, the notice has been served on him, and we think, on the service of the notice, the license ceased to protect the respondent.''

Substantially the same language is used in the case of *Platt* v. *Fire Extinguisher Mfg. Co.*, 59 Fed. 897, 900 [8 C. C. A. 357], and *Russell* v. *Boston Card Index Co.*, 276 Fed. 4.

It follows from the foregoing that the judgment must be and is hereby affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1928.

All the Justices concurred.