ENO SYSTEMS, INC. *vs.* MARY T. ENO & others.

Suffolk.    March 4, 1942. — April 1, 1942.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Equity Jurisdiction*, Forfeiture.  *Contract*, License under patent, Construction, Performance and breach.

A license under a patent, given with the predominant purpose that the licensee should exploit the patent for the mutual benefit of the parties, imposed on the licensee an implied obligation to make reasonable efforts to do so.

There was no ground for granting to a licensee under a patent equitable relief to prevent termination of the license according to its provisions for failure of the licensee to pay royalties when due where, although the royalties in arrears at the time a notice of termination was given were paid a few days after the notice, it appeared that the licensee, a corporation in which the licensor was a stockholder, had been formed for the sole purpose of exploiting the patent for the mutual benefit of

the parties, that it had not made a success of the venture and was in a precarious financial condition, and that it had made no attempt at exploitation for a considerable period before the notice of termination; and nothing appeared to show that it would be capable of accomplishing successful exploitation if given further opportunity to do so.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated July 31, 1941.

The suit was heard by *Beaudreau,* J.

*M. Jenckes,* for the plaintiff.

*A. Brayton,* (*G. L. Wilson* with him,) for the defendants.

RONAN, J. This is an appeal from a final decree dismissing a bill brought to secure equitable relief against a forfeiture of a license granted to the plaintiff by the defendant Mary T. Eno, as administratrix of the estate of Frank F. Eno, which she terminated on June 30, 1941, on account of the failure to pay her royalties in accordance with the said license. The defendant Lloyd Eno was the president and a director of the plaintiff, and the bill alleges that he advised and urged his mother, the administratrix, to cancel the license. No specific relief was sought against him.

We have a report of the findings of material facts by the trial judge and a full report of the evidence. It is our duty to examine the evidence and decide not only questions of law but also questions of fact, giving due weight to the findings of the trial judge which are not to be reversed unless they are plainly wrong. A careful examination of the evidence reveals that there is little if any dispute concerning most of the material facts, many of which we shall presently set forth and then refer to the findings made by the judge.

A new process for making innersoles for welt shoes was invented by the intestate. It consisted of cementing a tape rib around the edges of an innersole and stitching the upper and the welt to this tape. Special machinery was required to attach the tape to the innersole. Eno, in 1933, granted the right to the Prime Manufacturing Company to use his invention and this company supplied the machines and sold the tape and filler to shoe manufacturers who used this

process. The process was patented by Eno in 1935. After his death in 1938, Mrs. Eno did not believe that the Prime Manufacturing Company, hereafter called Prime, was dealing fairly with her in reference to the use of the patent under the contract with her husband. One Quimby, an old acquaintance of the Eno family who had been a shoe salesman for several years, thought that considerable money could be made from the patent, and it was largely through his efforts that the plaintiff was incorporated on May 13, 1940, for the purpose of exploiting the patent. Seventy-two shares of the total issue of one hundred fifty shares were given to Mrs. Eno. Her interest in the plaintiff was represented by her son, the defendant Lloyd Eno. Quimby was to manage the business of the plaintiff. He believed that he could successfully merchandise the tape and filler in competition with Prime, and that he could avoid litigation with the latter. Mrs. Eno gave a notice to Prime terminating the contract that her husband had given it. On May 27, 1940, she granted a license to the plaintiff to manufacture, use and sell the device covered by the patent. Under this license the plaintiff was to pay $100 monthly where the sales of tape were less than two hundred fifty thousand yards and $200 where the sales exceeded this quantity. Payment for each month after July, 1940, was to be made not later than the twentieth day of the next succeeding month, and payments for June and July, 1940, were to be made as soon as the finances of the plaintiff would permit, but in no event later than May 27, 1941. If payments were not made within thirty days after they became due or if the plaintiff became insolvent the administratrix could terminate the license by giving written notice to the plaintiff. She gave such notice under date of June 30, 1941. At that time, the plaintiff was owing the payments for June and July, 1940, and for May, 1941. The payments for the two earlier months together with interest and for the month of May, 1941, were made on July 9, 1941. The payment for the month of June, 1941, was made on July 18, 1941.

Quimby for some months after the incorporation endeavored to have shoe manufacturers purchase tape and filler

from the plaintiff. He arranged with one company to furnish machines and with another to supply tape and filler, and secured credit from both companies. The total sales amounted to $300 and no sales were made after September, 1940. The clerical work of the plaintiff was done in an office of a concern with which Quimby was associated. The plaintiff had received $3,000 from the sales of its stock and $2,000 from loans. Quimby had received up to July 1, 1941, as a salary, $747.50. The liabilities of the plaintiff on July 1, 1941, amounted to $7,993.31, and its assets to $167.12 which included the license which was carried at the valuation of $1. The only other assets the plaintiff had was a credit, the amount of which was uncertain, from two persons, who made the loans to it, and whatever it might realize from an action against Prime.

Efforts were made in behalf of the plaintiff and Mrs. Eno to make an arrangement with Prime, as the latter was interfering with the use of the process by the plaintiff. Nothing resulted from these efforts. Prime brought an action in the Federal court in November, 1940, to have the patent declared invalid and for an injunction against the plaintiff in this suit. A suit in the name of Mrs. Eno was brought, at the expense of the plaintiff, against Prime in the Superior Court on January 21, 1941, for an accounting of profits or the fair value of the use of the process to May 16, 1940, and for an injunction restraining Prime from further use of the process. The judge, on July 2, 1941, made findings in favor of the plaintiff in that suit, and a master to whom the suit was referred to find the damages has filed a report determining the amount of damages. The action of Prime in the Federal court has never been tried.

The trial judge in the case at bar made findings of fact. He found that the payments in arrears had been made and accepted by Mrs. Eno without waiving any rights under the notice terminating the license. He found that the plaintiff was obligated to assert its best efforts to promote the use of the patented process, that no sales were made after September, 1940, and that the plaintiff had not made a success of the venture.

The plaintiff had sought to secure a deferment of the May, 1941, payment, but the judge found that Mrs. Eno never definitely agreed to any extension. He also found that, at the time she gave the notice to cancel the license, Mrs. Eno knew that the plaintiff had not made a success of the business and that it had breached the terms of the license.

The decisions of this court have followed the general principle that equity does not favor a forfeiture. Relief against forfeiture has been granted although a lessee has failed to pay rent at the times and in the manner designated by the lease and even if such failure has been wilful and intentional, or where the lessee has breached a collateral covenant to repair or to furnish fire insurance and such breach has been due to accident or mistake and no harm has resulted to the lessor, or where, if the lessor was harmed, the damage could be readily ascertained and compensation paid so that the lessor would be put in the same position as if no such breach had occurred. But where the conduct of a lessee has been such as not to commend itself to a court of equity or where the circumstances of a particular case are such that the granting of relief would impose an unjust and unreasonable hardship on the lessor, then a forfeiture has not been set aside. *Atkins* v. *Chilson,* 11 Met. 112. *Mactier* v. *Osborn,* 146 Mass. 399. *Lundin* v. *Schoeffel,* 167 Mass. 465. *Gordon* v. *Richardson,* 185 Mass. 492. *Oesting* v. *New Bedford,* 210 Mass. 396. *Darvirris* v. *Boston Safe Deposit & Trust Co.* 235 Mass. 76. *Finkovitch* v. *Cline,* 236 Mass. 196. *Judkins* v. *Charette,* 255 Mass. 76. *Kaplan* v. *Flynn,* 255 Mass. 127. *Barry* v. *Frankini,* 287 Mass. 196.

The license contained no express undertaking upon the part of the plaintiff to work the patent. The parties knew the general situation prevailing in the shoe manufacturing business with reference to the use of the patented process and they hoped, by cancelling the license to Prime, to secure a large amount of that business for themselves. That was the only purpose for which the plaintiff was incorporated. It had no other business and the parties

did not contemplate that it should engage in any other venture. Moreover, they understood that the general policy of the plaintiff would be to merchandise the patented process and to compete successfully with Prime. The plaintiff was required by the terms of the license to keep accurate accounts of its business and to furnish full reports to the administratrix; to stamp the number of the patent upon every device manufactured or sold under the license; to prosecute any infringements of the patent; to defend any action brought against it for infringement; and not to assign the license or any right thereunder except to parties using the device in the ordinary course of business. The circumstances under which the license was granted must be considered with the language employed by the parties in determining their intent and the object that they thereby sought to accomplish. *Burdell* v. *Denig,* 92 U. S. 716, 722. *Clancy* v. *Troy Belting & Supply Co.* 157 Fed. 554. *Pressed Steel Car Co.* v. *Union Pacific Railroad,* 297 Fed. 788. The predominating purpose of both parties was the utilization of the patented process for their mutual advantage, and the grant of the license carried with it an implied obligation upon the part of the plaintiff to exert reasonable efforts to promote sales of the process and to establish, if reasonably possible, an extensive use of the invention in the manufacture of welt shoes. *Proctor* v. *Union Coal Co.* 243 Mass. 428, 432. *Boston & Providence Railroad* v. *Old Colony Railroad,* 269 Mass. 190, 195. *Eastern Massachusetts Street Railway* v. *Union Street Railway,* 269 Mass. 329. *McNally* v. *Schell,* 293 Mass. 356. *M'Intyre* v. *Belcher,* 14 C. B. (N. S.) 654. *Devonald* v. *Rosser & Sons,* [1906] 2 K. B. 728. *Genet* v. *Delaware & Hudson Canal Co.* 136 N. Y. 593. *Wood* v. *Duff-Gordon,* 222 N. Y. 88. *Corbet* v. *Manhattan Brass Co.* 93 App. Div. (N. Y.) 577. *De Stubner* v. *Microid Process,* 121 W. Va. 773. *Driver-Harris Co.* v. *Industrial Furnace Corp.* 12 Fed. Sup. 918.

The value of the patent depended upon its use. The plaintiff made no use of it after September, 1940. The administratrix could not expect any more than the monthly payments so long as there was no inexcusable inactivity

upon the part of the plaintiff to market the process, but she could justly complain, notwithstanding the receipt of the monthly payments, if the plaintiff had ceased to manufacture, use and sell the patented process and had abandoned any attempt to put it on the market. Neglect to exploit the patent or at least to make reasonable efforts to do so went to the root of the license.

We see nothing in the action of the attorney for the administratrix who had incorporated the plaintiff and had tried the case against Prime in the Superior Court, or in the action of the defendant Lloyd Eno, or in the fact that one or more of the directors had merely forgotten to make the payments for June and July, 1940, or in the present or probable future financial condition of the plaintiff, that would warrant a court of equity in finding that the situation of the plaintiff was such that justice and good conscience required that it be given another opportunity to promote the patent. Its past performance does not generate any reasonable assurance that it would be capable of doing so with any fair degree of success, even though the favorable termination of the suit against Prime would facilitate the sales of the process by the plaintiff. Nearly seven years of the term of the patent has expired and little seems to have been accomplished in utilizing the patent for the benefit of the inventor and his estate. We do not think that further experimentation by the plaintiff in endeavoring to secure a market for the process should be permitted under circumstances that the evidence tends to show would be practically at the risk of the administratrix.

Here there is much more than mere delay in making payments, and nothing herein decided is contrary to the general rule that the failure to pay royalties at the precise time designated by the license is not sufficient ground upon which to base a forfeiture of a license. This rule is predicated upon the principle that the right to cancel is security for the payments and ordinarily when payment has been made the licensor has received all he is entitled to and there is no necessity for invoking the security. *Gordon* v. *Richardson*, 185 Mass. 492. *Foster Hose Supporter Co.* v. *Taylor*,

180 Fed. 994. *Standard Stoker Co. Inc.* v. *Brewster,* 277 Fed. 783.

The fact that the administratrix held stock in the plaintiff did not, as the plaintiff contends, require her to warn the plaintiff that unless the payments were made she would terminate the license or limit her right under the license to terminate it by notice. *Revere* v. *Boston Copper Co.* 15 Pick. 351, 363. *Bell* v. *Fred T. Ley & Co. Inc.* 278 Mass. 60, 75. *Faulkner* v. *Lowell Trust Co.* 285 Mass. 375.

The circumstances in this case do not warrant interposition of equitable relief. *Gordon* v. *Richardson,* 185 Mass. 492. *Finkovitch* v. *Cline,* 236 Mass. 196. *Goltra* v. *Weeks,* 271 U. S. 536. *White* v. *Lee,* 3 Fed. 222. *Hammacher* v. *Wilson,* 26 Fed. 239. *Platt* v. *Fire-Extinguisher Manuf. Co.* 59 Fed. 897, 900. *Brewster* v. *Lanyon Zinc Co.* 140 Fed. 801. *Oscar Barnett Foundry Co.* v. *Crowe,* 219 Fed. 450. *National Clay Products Co.* v. *Heath Unit Tile Co.* 40 Fed. (2d) 617. *Bee Machine Co.* v. *Freeman,* 40 Fed. Sup. 299, affirmed 121 Fed. (2d) 451. *American Woodlite Corp.* v. *Woodlite Corp.* 89 Cal. App. 772. *De Stubner* v. *Microid Process,* 121 W. Va. 773.

*Decree affirmed with costs.*