KEITH OIL CORPORATION & others *vs.* WARREN S. KEITH & others.

Plymouth. January 7, 1955. — April 27, 1955.

Present: QUA, C.J., WILKINS, SPALDING, & COUNIHAN, JJ.

*Contract,* Construction, Performance and breach, Respecting management of corporation. *Equity Jurisdiction,* Forfeiture.

In an agreement containing provisions for surrender of control of a corporation by its majority stockholder through transfer of all his shares and for his receiving a promissory note for his shares payable in instalments over a considerable period, a provision requiring a report by a certified public accountant to be made monthly and to show "a profit and loss statement [respecting the corporation] for the preceding month and the preceding year," and a provision, repeated in substance in the note, that the whole unpaid balance of the note should become due if a report made by the accountant showed a loss in the operation of the corporation "for any full year of operation," such "full year of operation" meant the preceding twelve months covered by each of the monthly reports, but not including any such twelve months beginning earlier than one year after the date when the new owners assumed control of the corporation. [550–551]

Payments from funds of a corporation of monthly instalments on a promissory note given by three brothers to a fourth brother for his majority stock in and the control of the corporation was a breach of a provision in an agreement made by the four brothers that "while the . . . note is still unpaid . . . there will be no . . . transfer of any assets of the corporation other than in the usual course of business," notwithstanding that such payments were charged to the three brothers as accounts receivable of the corporation and that it had always been run as a family enterprise and corporate funds had been freely used without objection to pay personal debts of family members. [551–552]

In the circumstances, although use of funds of a corporation to pay instalments on a promissory note given by three brothers to a fourth brother for his majority stock in and the control of the corporation was a breach of an agreement made by the four brothers, and the note contained a provision that the whole balance thereof should become due by reason of "failure on the part of the makers . . . to live up to the terms" of the agreement, such breach in equity ought not to have the effect of accelerating maturity of the balance of the note if the three brothers forthwith paid to the corporation the amounts of its funds so used. [552]

A bookkeeper of a corporation who communicated information about it without authority from its officers to one who was their potential antagonist and rival for control of the corporation was justifiably discharged by it, and his discharge was not a breach of an agreement between the officers and the one to whom he communicated the information that he should not be discharged by the corporation "except for failure to properly discharge . . . [his] duties." [552–553]

BILL IN EQUITY, filed in the Superior Court on February 5, 1953.

The suit was heard by *O'Connell, J.*

*John R. Wheatley,* for the defendants.

*William D. Crosby, (Ovide V. Fortier* with him,) for the plaintiffs.

WILKINS, J. The plaintiff Keith Oil Corporation was organized by the late father of the plaintiffs Howard C. Keith, Robert D. Keith, and Richard H. Keith, and of the principal defendant Warren S. Keith. Another plaintiff is his widow, Elizabeth S. Keith. Other defendants are one Hinckley, a former bookkeeper of the corporation, and John R. Wheatley, Esquire, who is a depositary of shares of stock of the corporation under an agreement of December 4, 1951. This is a suit under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for a declaratory decree as to rights under that agreement. From a final decree hereinafter described the defendants appealed. The judge made an extensive report of the material facts found by him, which is the equivalent of a report under the statute. G. L. (Ter. Ed.) c. 214, § 23, as appearing in St. 1947, c. 365, § 2. The evidence is reported.

The company was always run as a family enterprise, and the stock was owned by members of the Keith family. In 1951 Warren was president, treasurer, and holder of a majority of the voting stock. His brothers were no longer employed by the company. Howard and Robert were then engaged in their own business of installing heating and air conditioning equipment. The individual plaintiffs and their sister prosecuted a stockholders' derivative suit in the United States District Court, and alleged mismanagement and waste of assets by Warren. *Ashley* v. *Keith Oil Corp.* 73 Fed.

Sup. 37 (D. C. Mass.).   In settlement of that controversy the agreement of December 4, 1951, was executed by the four brothers, their mother, their attorneys, and the sister. By its terms Warren surrendered control to his brothers, and stepped out of the management and employ of the corporation, accepting for all his shares a promissory note signed by his brothers in the amount of $55,000, payable $500 monthly.   His attorney, Mr. Wheatley, was named as depositary of the shares,[1] which in the event of a breach of the agreement or of the note it would be his duty to transfer to Warren in full payment of the note.   Mr. Wheatley also held the resignations of the three brothers effective should there be such a breach.   On February 2, 1953, Warren wrote his brothers, alleging breach of the agreement and of the note, and demanding payment.   He also gave notice that in case the note should not be paid by February 6 he would request Mr. Wheatley to deliver the stock to him. The present suit followed.

1. The first question is whether there was a breach of the agreement and of the note by reason of a loss "for any full year of operation."   Paragraph 3 of the agreement reads in part: "the note shall become due if in any two consecutive months during the period from the first of November to the first of April in one year, the report made by Scovell-Wellington Company or some other C. P. A. who uses the same accounting methods as are now used at the present time shows a loss in operations of the Keith Oil Corporation, or if such a report shows a loss for any full year of operation of the company."[2]

---

[1] The agreement also provided that Mr. Wheatley should be the depositary of "enough additional shares of common stock and preferred stock so that the total deposited will amount to two thirds of each class of stock."

[2] The phraseology of the note varies slightly.   "The whole remaining balance due upon this note shall become due upon the happening of any of the following contingencies: . . . 2. If the reports made by Scovell-Wellington Company, or some other C. P. A. who uses the same accounting methods as are now used at the present time shows a loss in operations of the Keith Oil Corporation for any two consecutive months during the period from the first of November to the first of April.   3. If said reports as are listed above show a loss in the operation of the Keith Oil Corporation for any full year of operation by the company."

The judge found that the business was seasonal; that "a reasonable interpretation is that the fiscal year should be from January 1 to December 31"; that with the agreement so construed the company was not operated at a loss by the present management; and that if the agreement means the year beginning November 1 and ending October 31, no loss was actually incurred.

We think that the clue to what the parties intended by paragraph 3 is furnished by paragraph 8 of the agreement. This reads in part: "Monthly reports are to be given by Scovell-Wellington Company, or some other C. P. A. as provided above to John R. Wheatley, or his successor, said reports to show the present balance sheet of the corporation and a profit and loss statement for the preceding month and the preceding year." The reference in paragraph 3 must be to the preceding year, that is to say the preceding twelve months, covered by each of the monthly reports required by paragraph 8. Taken literally, this would include a period of the preceding twelve months no matter how many of them were during the administration of the three brothers. We ourselves find that they did not assume control of the corporation under the agreement of December 4, 1951, until the date of the note, December 15, 1951. We are of opinion that the parties did not intend the yearly periods, a loss during which would accelerate the maturity of the note, to begin until after twelve months of operation of the business by the three brothers. Thus interpreted, we are not interested in any alleged loss during the twelve months ending October 31, 1952. See *Stein* v. *Strathmore Worsted Mills*, 221 Mass. 86, 92–93.

2. The defendants' next contention is that there was a transfer of assets other than in the usual course of business in violation of paragraph 14 of the agreement, which reads: "it is further agreed by Richard Keith, Howard Keith and Robert Keith and such officers of the corporation as may be elected while the above described note is still unpaid, that there will be no sale or transfer of any assets of the corporation other than in the usual course of business." The

note provides that the balance of the note shall become due by reason of "5. Failure on the part of the makers of this note, or the Keith Oil Corporation to live up to the terms" of the agreement of December 4, 1951.

Following the execution of the agreement and the note Warren received the stipulated monthly payments of $500, but the payments were made from company funds. Warren, through his attorney, objected, but payments continued to be made in this way until the present suit was brought. Later, as we ourselves find, Warren learned that the monthly payments were charged to the three brothers as accounts receivable, and that there had been other charges to accounts receivable for cash, fuel, and other items purchased for the individual plaintiffs.

The judge found that during the lifetime of the father many personal obligations were charged as corporate debts, and that corporate funds were freely used without objection to pay personal debts of family members. After his decease the practice continued, and debts of the children and the mother were paid in this way. Between 1938 and 1946 Warren paid many of his personal bills with corporate funds.

The judge ruled that the three brothers did not have the right under the agreement to make the monthly payments from corporate funds, but that doing so prior to objection did not constitute a breach because of the family practice. We do not agree that there was no breach. We think that there was. The three brothers, however, have made substantial payments on the note, and some of their stock is in the charge of the depositary. We are of opinion that the principle that equity does not look with favor upon forfeitures is applicable. *Eno Systems, Inc.* v. *Eno,* 311 Mass. 334, 338. *C. J. Hogan, Inc.* v. *Atlantic Corp., ante,* 322, 326–327. But we think that the individual plaintiffs first should pay into the company treasury the amounts of the monthly payments made on the note with corporate funds and charged to their individual accounts.

3. The defendants argue that the defendant Hinckley was discharged in violation of paragraph 12 of the agree-

ment, which reads: "Employees, Hinckley and Alden, are not to be discharged by the corporation for a period of five years, except for failure to properly discharge their duties." The judge found that the discharge of Hinckley was justified, and that the inference is warranted that Hinckley, who, as bookkeeper, occupied a position of confidence, communicated information about the company to Warren. These findings are not plainly wrong, and are sufficient to uphold the action in terminating his employment. It could be found that there was "failure to properly discharge . . . [his] duties" if without authority he passed on information to a potential antagonist of the officers of the company and their rival for its control.

4. So far as material to the issues of this case, the decree stated that there was no breach by Howard, Robert, or Richard of the terms of the note or of the agreement; that they were justified in discharging Hinckley; and that "any full year of operation" means fiscal year from January 1 to December 31. The decree (1) restrained Howard, Robert, and Richard from making payments on the note to Warren out of corporate funds except such funds as are paid to them for salaries and expenses; (2) restrained Mr. Wheatley from delivering to Warren the stock certificates and resignations; and (3) restrained Warren (a) from receiving the stock certificates or resignations, (b) from attempting to exercise any control over the corporation, and (c) from "attempting to harm by action" the corporation in the conduct of its business.

The decree must be modified by providing that "any full year of operation" means the preceding twelve months covered by each of the monthly reports required by paragraph 8 of the agreement but not covering any time earlier than December 15, 1952; and by providing that payments made on the note with corporate funds were a breach both of the agreement and of the note, but that if Howard, Robert, and Richard forthwith repay to the corporation the amounts of such payments the breach shall not have the effect of making the balance of the note immediately pay-

able. If repayment as aforesaid is made, the decree, as so modified, is to be affirmed, but if repayment is not made, the decree is to be reversed, and the case to stand for further proceedings not inconsistent with this opinion.

*So ordered.*